**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

PINNACLE MINDS, INC., )
) Case No. 1:26-CV-00501
) (LJV)(JJM)
Plaintiff, )
)
vs. ) April 30th, 2026
) 12:43 p.m.
CULAIN CAPITAL FUNDING, INC., )
)
Defendant. )

**TRANSCRIPT OF SETTLEMENT OF PRELIMINARY INJUNCTION CONFERENCE**
**BEFORE THE HONORABLE JEREMIAH J. MCCARTHY**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

For the Plaintiff: PHILLIPS LYTLE LLP
BY: JOSEPH L. MOONEY, ESQ.
JOHN G. SCHMIDT, JR.
One Canalside
125 Main Street
Buffalo, NY 14203-2887

For the Defendant: MAGAVERN, MAGAVERN & GRIMM
BY: RICHARD A. GRIMM, III, ESQ.
1100 Rand Building
14 Lafayette Square
Buffalo, NY 14203

WOODS OVIATT GILMAN LLP (BUF)
BY: WILLIAM F. SAVINO, ESQ.
50 Fountain Plaza, Suite 320
Buffalo, NY 14202

Court Reporter: MEGAN E. PELKA, RPR
Robert H. Jackson US Courthouse
2 Niagara Square
Buffalo, NY 14202
Meganstranscripts@gmail.com

THE CLERK: We're on the record in 25-CV-501, Pinnacle Minds, Inc. v. Culain Capital Funding, LLC. All counsel and parties are present.

THE COURT: Good afternoon, everyone.

MR. SCHMIDT: Your Honor, thank you. The parties are prepared to put a settlement of the preliminary injunction motion on the record.

THE COURT: Wonderful. Wonderful. Are you going to state the terms and then --

MR. SAVINO: May I ask a question? Without having signed the 636 stipulation --

MR. GRIMM: We did.

MR. SAVINO: Right. We did sign. With our having signed the 636 stipulation, I'm assuming that if this -- if plaintiff decides to pursue the pending litigation, and if we -- or, if we decide to pursue our counterclaim, are you our judge for the rest of the case?

THE COURT: The consent thus far is only to the motion.

MR. SAVINO: Okay.

THE COURT: So, if you want to consent to me for the entire case, God bless you. And if you don't, that's okay, too.

MR. SAVINO: We're going to want to consent to you because you've got the benefit of --

THE COURT: Well, I don't like to -- I mean, I can understand I've got some familiarity now. I don't want to put anybody on the spot. So, talk about it. If you want to consent to me, fine. You can -- for the remainder of the case, you can do that. If somebody doesn't want to, that's okay, too.

MR. SCHMIDT: I'd like to make a motion that Rich Grimm do the rest of the talking for Culain.

THE COURT: That was a joke, Bill. But if you are -- well, let's put the settlement or the motion on the record and then we'll see where we go from there.

MR. SCHMIDT: Your Honor, we have a number of points here with regard to the settlement. The first being that Pinnacle Minds, Inc. will withdraw its motion for a preliminary injunction.

THE COURT: Just a point of clarification, too, the motion for the TRO has already been decided by Judge Vilardo. So --

MR. SCHMIDT: That was denied on the record. I think this is withdrawn.

THE COURT: Okay. Got you. Got you.

MR. SCHMIDT: The -- two, Culain will issue payment to Pinnacle on non-factored invoice collections, with Pinnacle to receive 60 percent of those collections weekly with no cap, and this is going forward from today. Retroactively, to the

last payment on or about January 13th, 2026, on non-factored receivable collections, Culain will pay Pinnacle 50 percent of those collections without a cap.

MR. SAVINO: Of non-factored?

MR. GRIMM: Right.

MR. SCHMIDT: Non-factored subject to reconciliation to be paid promptly after Pinnacle Minds, Inc. providing read-only access to Culain to its bank accounts, and with a brief period for Culain to confirm that there have been no diversions of receivables subject to the lockbox under the agreement.

MR. GRIMM: And that's fine. The only other thing I think that we talked about, Your Honor, is that we're going to get a representation from PMI that the view-only access to its deposit accounts represent all of its deposit accounts, right?

MR. SCHMIDT: Yes. That's -- and it's the accounts that are on the record already here, those six.

MR. GRIMM: And that those are the only accounts that exist as of today, and if an account were to be opened after today, can we get that? That will be included?

MR. SCHMIDT: Yes.

MR. GRIMM: Okay. Thank you.

MR. SCHMIDT: Pinnacle Minds will provide Culain with the IRS notices of overpayment that are sent to customers if and when they are received. Culain --

THE COURT: By -- received by Pinnacle or received by the customers?

MR. SCHMIDT: By Pinnacle.

THE COURT: Okay.

MR. SCHMIDT: Dare I say, per invoice, without prejudice. Culain agrees that it does not claim an interest in this litigation regarding PMI's other lines of business; ie. ERC Advocate and merchant services, which are not subject to Culain's lockbox, and this is without waiver of Culain's asserted rights to collateral.

MR. GRIMM: In other words, Culain takes a position that those other accounts, or those other lines of business, remain -- that collections with the other lines of business remain as collateral. We're not asserting any right to that collateral as of today. We're only asserting rights in the collateral today to the Smart ERC collections that are subject to the lockbox -- that wind up in a lockbox, right?

MR. SAVINO: As described in the section on collateral in the invoice factoring agreement, and as described in UCC1, those receivables would be part of the collateral base because they are accounts receivable of PMI.

THE COURT: Okay.

MR. SCHMIDT: The -- I follow Rich's part. I'm sorry, I didn't entirely follow Mr. Savino's, but I also say that it's -- I think what Rich said, and what I said covered

sufficiently. The -- although I appreciate Mr. Savino's comments, the parties reserve all other rights, claims and defenses in this litigation.

THE COURT: Okay. Mr. Grimm and Mr. Savino, do you concur in everything that Mr. Schmidt has placed on the record as being the terms of the resolution of the preliminary injunction motion?

MR. SAVINO: I'm just checking my notes, Your Honor.

MR. GRIMM: I checked mine.

MR. SAVINO: Correct.

THE COURT: Okay. Good. Well, I appreciate your willingness to work together to resolve this aspect of the case.

Now, in terms of the remainder of the case, whether you wish to consent to my jurisdiction over the remainder of the case or not, that's -- I'm not asking you to confirm that today unless you want to. And if you decide you do want to, great. And if you decide you don't want to, equally great.

I'll just point out to you that I think I mentioned previously Judge Vilardo has the Payton Gendron death penalty case coming up later this year, and it's going to take a good deal of his time, but in the interest of full disclosure also, I think some of you know that I will be retiring from active duty at the end of next February. I hope to stay involved with the court on an ongoing *ad hoc* basis, but I don't know

whether that affects anybody's thinking or not. So, I take it there -- then, I guess, we would need to set a case management order for pretrial proceedings, right?

MR. SCHMIDT: Yeah. At this point, Your Honor, I also -- we haven't discussed this with Mr. Anthony or Mr. Kerolos, and we'll also need to discuss it with Blank Rome.

THE COURT: Yeah. No, that's fine. That's fine. I'm not asking anybody to make a commitment one way or the other. And I'll tell you again, I take no offense which ever way you go. Let me ask you this, though. Whether it's -- whether the remainder of the case stays with me because you consent or whether it doesn't, is this ultimately going to be a jury trial?

MR. GRIMM: Mr. Greiner reminds me that there's a jury trial waiver in the agreement.

THE COURT: Oh. I say that only because, you know, I've heard a lot of testimony. But if it's a jury trial, they might -- if it goes to that point, they'd have to hear everything again. So, I just throw that out. Something to consider. If you decide to go with me -- and, again, I'm not forcing anybody to do that at all -- I have various things going on during this year, and, you know, we'd have to work on scheduling. And if you decide to stay with Judge Vilardo, I think it's pretty safe bet it's going to be later this year.

Might be later this year for me, too, but be that as it may -- so, I mean, while we're all here, do we want to talk about -- so that I could set a case management order today, or do you want to come back on another date? Or -- actually, I normally do those by teleconference.

MR. GRIMM: If we could get a new date for that, I think that would be great and just kind of let everybody kind of regroup.

THE COURT: Sure. What I'll do, as I do on every civil case, I'll send out an order -- just a text order scheduling that conference. That will be a teleconference. And -- with a draft of the case management order format that I want. And then you can submit proposals, preferably a joint proposal, but, otherwise, your own proposals and then we'll have a teleconference and we will nail that down.

Just to give you advance warning, I think most of you in any room have heard my creed on this, but I'm not a big fan of scheduling orders. I'd rather leave it up to the lawyers to progress the case at the pace that they prefer, but I'm obligated by Rule 16 to issue a scheduling order, and Rule 16(b)(4) limits my discretion to extend those deadlines to a showing of good cause which, in this circuit, means that you've been reasonably diligent but, for some reason, can't meet the deadline.

Now, I've practiced law myself. I know issues can arise,

but I just will caution you in advance, don't wait until the last minute to ask for an extension, and a stipulation by the parties to extend a deadline is helpful, but is not, in and of itself good cause. Forewarned is forearmed, okay?

So, now you have -- everything has be on the record thanks to Megan. Thank you, Megan. I guess the terms of the resolution of the preliminary injunction, I'll just -- I'll issue a text order saying, as indicated today, the preliminary injunction is withdrawn on the terms that have been set forth, okay?

MR. SCHMIDT: Thank you.

MR. SAVINO: Thank you. And we're going to ask Ms. Pelka to give us a transcript of the stipulation that was recited just now.

THE COURT: Just the -- just -- not everything that's gone so far, but I assume, at some point, you're going to want a transcript of everything, but that's up to you.

MR. SAVINO: We may. We may not. We definitely want the -- I know you have to have the application form. I'm just giving this to you. That's me.

THE COURT: All right. Well, as I said earlier, for the benefit of the clients, okay, I don't always say this about lawyers, but this -- both sides have been very well-represented, and the written submissions have been excellent. The oral presentations have been excellent. A lot of complex

issues here that somebody is going to have to wrestle with, either Judge Vilardo or me, but I just want to say I think you're all well-served, and I was not paid by any attorney to say that, okay?

So, safe travels, and we'll be in touch. I'll -- as I said, I'll issue a text order for the scheduling conference and when everybody decides whether they -- well, I'm just going to say, I'm going to proceed on the assumption that there is no consent unless and until a consent is filed, okay?

MR. SAVINO: Thank you.

THE COURT: All right. Thank you all. Take the rest of the day off. Oh, yeah. Why don't we set a date right now for the teleconference?

THE CLERK: Are both sides available Thursday, May 28th? It's a month from now. It's just by phone.

MR. SAVINO: I'm available in the morning. You know what, I'm in New York City the next day. Can we get a different date?

THE COURT: We can do it earlier than that, I would think.

MR. SAVINO: Like at 9:30? Does that work for you?

MR. GRIMM: Yeah.

THE CLERK: We're talking about May 28th. You want do it at 9:30 in the morning?

MR. SAVINO: Yes.

THE CLERK: Does that work for you?

MR. SCHMIDT: Yes.

THE CLERK: Oh, okay. Perfect. So, May 28th at 9:30.

MR. SAVINO: And that's remote?

THE CLERK: That's just phone. I will issue a text order with the call-in instructions.

MR. SAVINO: And, Your Honor, I was brought in for certain parts of this case. I will handle whatever parts of this case Mr. Grimm tells me to handle, which could be zero or could be more.

THE COURT: Sound good. Well, it's been a pleasure. Thank you all.

(Proceedings concluded at 12:57 p.m.)

* * * * * * *

I certify that the foregoing is a correct transcription of the proceedings recorded by me in this matter.

s/ Megan E. Pelka, RPR

Official Court Reporter